It's Mr. Townsend. Good morning. Good morning. Will you speak speak with us, please? May it please the court. This case is here based on the fact that the trial court ruled against the appellant in this case. I think that the similar issues that come up on appeal is the number one, the reliance of the appellees on the issue of immunity is extremely well talked about in both briefs. And we are still of the belief that when this agency was created, well, this unit of the Alabama Department of Education was created, there was no such determination that first of all, it was a state agency. It's part of the State Department of Education, isn't it? Right. And just like the courts have ruled in other cases that just being a part of an agency does not inert to you state immunity. This is part of a state department. I mean, from the 1981 claim, I mean, it appears to me that the state immunity is I just don't see how you get around it. Certainly, there are cases that we provided both in the original brief and in the 28J filings that were filed on yesterday that, again, allude to cases that say that an agency does not incur immunity just by being part of a state agency. And also, then the second argument would Do you think the State Department of Education itself enjoys immunity? Yes, sir. The same issue came up in the case of UAB and UAHSF, which UAB is a state agency, but their appointee or their subdivision of UAHSF does not enjoy immunity simply because of the fact that they're affiliated with the University of Alabama-Birmingham, which clearly is a state Some of which are mentioned in these briefs and also in the subsequent filings on the 28Js. And I think there's a fairly decent line of law that says that The Federal Social Security Act says that a state agency makes the disability determinations. That's what the federal law provides. That is the reason for existence for this agency. And then when you look to Alabama, the services, one of the divisions and services of the State Board of Education, I'm looking at 1623, it's organized and is empowered to organize to carry out its work efficiently. It's overseen by the state superintendent who reports to the state superintendent. I mean, this does not appear to me at least to be your most promising argument. If I just may add, in the actual makeup of this agency, nobody, there's nowhere in the record that shows that anybody in this agency from the management level on down ever reports to anybody at the state. That's not been produced any evidence. They are by name a part of the Alabama Department of Education. But all the actors in this case were strictly from disability determination services, strictly from within that agency. I don't know. I mean, 362665 identifies the service and specifically designates its employees as state employees, right? No, Your Honor. As a matter of fact, the 362665? Yes, sir. 362665. Lists the DDS as a division of the Department of Education. Right. And its employees are state employees. Not based on the facts of this case, Your Honor. They were added into the state retirement system after the fact just to show them a benefit. They were never hired as state I think now they do actually fall under personnel board rules. But once again, they were not originally designated as state employees. They were added to the state retirement system after the fact. Now, the trial court judge in this case himself alluded to the fact that these individuals, that the DDS had failed to provide sufficient evidence that they were a state agency. That was in his original ruling. And he left it open to be proved at a later date. May I turn you to the merits of your case? There was something I wasn't clear on from the record. As I understand it, you have a  So it looked like to me that your client met the requirements for a promotion during the mid, like in the 2005 time frame, something like that. But other than that, Mr. Lynch didn't recommend her, which is one of the requirements. Where is the record developed on the reasons for the non-recommendation or is there anything in the record about that? There is not, Your Honor. And also this allegation or inference that you had to be recommended by a supervisor has never been let's say added to any document or policy and procedure at the agency. Okay. This is something that only came up In the deposition, the deposition of the director. An individual has to be recommended by a supervisor. There's no record that I remember of in the evidence in this case that says that that was a common practice that it was a rule or regulation. Well, it doesn't have to be, does it? I mean, if the reason that those individuals were promoted was because they either met or exceeded standards and had received a recommendation from their supervisor and the agency asserts that that was the legitimate non-discriminatory reason for why they were promoted, whether there's a rule about that or not is really irrelevant, isn't it? You have to knock down that as a legitimate non-discriminatory reason for the promotion, don't you? Thank you, Your Honor. The historical basis is what knocks it down as a rule or inference because prior to them doing away with the standard roster process by which they selected people for promotion and so forth, there was no requirement that you'd be recommended by a supervisor ever. You simply had a register. Understood it. I mean, their argument was whether she was eligible for a promotion. It's kind of beside the point. The reason she didn't get it was because the ones they actually promoted were folks who had been recommended by their supervisors. And, Your Honor, there's no evidence in the record that that was ever policy prior to this case. It doesn't have to be a policy. I mean, you don't have to have a policy for why you pick one person over another. You've got people, all of whom are eligible according to whatever the job, but you want to pick the best person. Right. And you look at the person, you look at their employee reviews, and you've got individuals who always meet or exceed standards and have been recommended by their supervisor versus someone who's partially met standards and has not been recommended by their supervisor. That'd be an easy call to make the promotion, wouldn't it? Well, Your Honor, the entire history of Ms. McCurdy's eligibility for promotion, only in the last year when she was under Beth McCurdy was there an inference that because she was not meeting those standards is the reason she was not promoted. Yeah. Well, we were talking, though, about the failure to promote that occurred in 2005 and 2006, and that was before Jones became her supervisor, right? Right. But the relevant issue is she continued to be eligible from 2005 and 2006 up until the time she was terminated, including... Okay. Well, that's a termination claim. I mean, you don't have any other failures to promote instances beyond those 2005 and 2006, right? That is a failure to promote, Your Honor. She was still eligible the entire time all the way up to when she was terminated. She was still eligible for promotion then. Yeah, but you have to identify a specific job for which she was not promoted and that was vacant and, you know, you had an opportunity to promote them to that at that particular time to that particular job. That is in the pleadings in the brief, Your Honor. She was eligible all the way up to the time that she was terminated to be promoted from a simple disability determination specialist to a supervisor. She maintained that eligibility because they did away with the actual register and said that every individual that had been before would be continued to the future without the register because they did away with the register itself. So, there was no requisite for her to do anything differently after they got rid of the register in order to be qualified for promotion. All right. Mr. Townsend, you've saved five minutes for rebuttal. Let's hear from Mr. Kent. Please, the Court. Bergen Kent, representing the State of Alabama Disability Determination Service, just as a simple, do y'all have a copy of the Marshall letter brief that was filed yesterday? The 28J letter, is that? It's about the 11th Amendment on a Marshall case that was decided by Judge Kent. Oh, yeah, this letter. Oh, it's here. Yeah, the September 19th letter, right. I'll admit to something in open court. I'll do it happily this morning. I find 28J letters 99.9% of the time completely irrelevant and unhelpful. And I wish this had come up earlier in the day when there were more lawyers still in the room. I don't believe I would have said that, but I do tend to agree with it. Well, you did just say that, and you make me feel a lot better about it. And I'm, you know, I'd be willing to bet you could poll our court and you'd get that. Well, then I apologize. I mean, you know, it's one thing if you get, if you really have a case that's on point, that's new, that has come, that has just recently come out since briefing, and it really has something that, about which we ought to be aware. We might not know about it, but boy, that can be very helpful. But the number of times I get a 28J letter with something like that, you know, I could probably, in 14 years on this court, count them on one hand. I apologize, Your Honor. On this case, talking about the failure to promote, first of all, all of the failure to promote claims are barred by the statute of limitations. That was part of the reason why the record wasn't developed more. So, because they were happening between 2005 and 2007 was the only time she was eligible to be promoted. We hadn't gotten... It seemed like she didn't know that there was a requirement that she needed her supervisor's recommendation. I mean, I guess that's kind of a... But she did know. No, in 2005, 2006. Well, our lawyer's standing here this morning saying she, they were never aware that that was one of the requirements until this litigation. There was a letter she wrote in 2005 saying that her supervisor had failed to recommend her twice. Okay. Where is that in the record? It's, I think it's in the judge order. Oh, in the district court order? Yes, ma'am. All right. Thank you. Anyway, the failure to promote, in order to be promoted, you have to be on the register. The register is put together by the state personnel department. The Department of Disability Determination Service cannot promote somebody that is not on the register and she has not been on the register since 2007. So, anything that she couldn't be promoted after 2007 without violating the rules. Yeah, I was talking about before that. Okay, I'm sorry. I think it's in that, it's in the order somewhere. It's for the termination. This case is all about there is no similarly situated individual that she was treated less favorably then. We've gone through all the, I can explain to you if you want it, how all the ratings are done. It's very, it's not complicated. It just takes a little while to do it. But there are four responsibilities that each disability specialist has. They're rated from zero to four. There's a chart that's in the record of how those are met. Three of those are objective or totally a mathematical equation. The simplest one I would say is the age case control. You take the number of active cases the disability specialist has and then you look at having them or 90 days old or older. And you take a percentage and if it falls within each category, then that's what the rating is. Those are, that's set out in document 68-4, one through four. That lays out that three of those are based on mathematics. The other area is developmental quality. That is based on the informed opinion of the supervisor. They go through and look at the files. I think it's two a week, at least two a week, to see what's being done. Whether or not they're making the calls, whether they're following up with the applicant, whether they're getting the medical records in. And when Ms. McCurdy fell below standards at the end of the, in December 2011 at her annual evaluation, as called for by DOGS 822A, the, she was told you got six months to get your score up to meet standards. She was at a 10, she needed to get a 16.7. At that point, the quality assurance division of the DDS audited every one of her open cases. There were 113 of them. They found out of 113, 103 had deficiencies in them. She makes complaints that she has more files than other people. She does have more files than other disability specialists because she isn't getting the work out completing them. She makes a big deal about her quality scores. She's had admirable quality scores. But her job is to, an all disability specialist job, is to make a determination whether an applicant is to receive disability benefits in a timely and accurate manner. And that's the problem, is the timeliness. That she was given six months after she scored a 10 on her annual review and she continued to score a 10. I think she, in April of 2012, she received a zero and responsibilities two, three, and four. In July of 2012, she scored a zero in each of those same areas. McCurdy has worked for numerous unit supervisors while she's at DDS. And she admitted in her deposition that she'd received a case management action plan, which is given out every three months if you aren't meeting standards, from six or seven of her supervisors. That's been a problem all along. You had, you aren't meeting standards if you get a case management plan. The order entered by the administrative law judge in the personnel board hearing said that she failed to meet standards in at least one of the four areas of responsibility. In the years 2005, 6, 8, 9, 11, and 12. So this isn't a recent problem. Let me talk a little bit, you know, the summary judgment standard. She's got, she never came forward with any credible evidence or any evidence, admissible evidence, that she was treated any different than anybody else. Yeah. The only person that she compared herself to is Jackie Barrow. Yeah. Mr. Kent, you know, with the focus of your adversary this morning, it had been on the sovereign immunity claim. Do you want to say anything about that? Sure. Sure, not going to talk about that recent, that old case that it gave you. Yeah, that was reaffirmed without a reported decision by us. All right. First of all, the 11th Amendment immunity, as Judge Pryor, you pointed out, says state law, I mean the federal law, says it's to be determined by a state agency. All of the employees are state age, or state employees at the state of Alabama. They all come under the state personnel board. They get the same benefits as people under the personnel board. They were notified by the state superintendent of education for the notice of termination. She appealed it through the personnel board, which is all state related. All the grounds, all the responsibilities that are set out for the evaluations are determined by the state. That's determined by DDS, an arm of the state department of education. So, everything involved is the state, except for the funding. And this is really only relevant to the 1981 claim, right? Correct, correct. 81 and 7 have the same standard of view on the discrimination, but there's no immunity on the Title VII claim. That's not being... Congress abrogated that. Right. And there was a mention, I just have to bring this up, that there wasn't an appeal, interlocutory appeal filed by the DDS, I'll call it, state department. We filed a motion to dismiss at the very start on state agent, excuse me, 11th Amendment immunity. And Judge Green, the magistrate judge said in his August 13, 2005 report and recommendation concerning our motion to dismiss, the court held the defendant's motion under the 11th Amendment was underdeveloped. And defendant may reassert this argument at a later stage in a more developed record. And in a footnote, it said the denial of the motion to dismiss as to this claim is without prejudice to defendant's reassertion of the 11th Amendment immunity argument. Mr. Kent, will you tell me why you're telling me that? Because it was argued in the brief that we waived it and couldn't come forward with it. Well, you can't, you can't waive the state sovereign immunity. I'm pretty sure you could if you had removed this action from state court to federal court, but... Okay. All right. The funding the state disability determination service receives from the federal government... ...is to make determinations of disability. There's no basis, there's no funding provided to pay for any kind of discrimination. So there's no state funds made available for that. The federal government ain't gonna pay it. The state is arguably preventing from paying it. As a practical matter, if there's ever a payment made under that, it would have to come from the state because it's not coming from the federal government. And those factors along with the... Okay. ...definition and control and such. Let me add one last thing. If it comes up, there's a lot of argument in the brief about a motion to strike. I'd like to have just about a minute to cover that. I thought it was extremely clear that the Apollito affidavit sent out, you know, material information and that it had not been rebutted with any admissible evidence. I was mainly talking about the basis of the motion to strike. They moved to strike the Apollito affidavit, right? Right. The basis for it, they said he didn't show up. Yeah, well, it's very clear to me that he did and that they really produced nothing to suggest that he did not. Okay. Anybody have any questions? We don't. Thank you. Sometimes it's helpful to take a cue. Sometimes it's helpful to take a cue from the court. Mr. Townsend? I'll start with the affidavit and work back with you, Your Honor. There's clear argument and so forth in the brief that Mr. Apollito didn't show up for his own deposition. Yeah, I'll tell you what. The argument doesn't do anything. And it's supported by the actual notices of deposition and so forth. That part of this appeal, I got to tell you, I thought was so frivolous as to make me wonder whether there ought to be sanctions for it. I mean, I don't see any evidence to support your client's version of the facts about that issue. Is there any evidence? Yes, Your Honor. Where? The fact that we filed... The fact that you filed something? The fact that the depositions were... The deposition notices, excuse me. Yeah, you know, there were uncontradicted affidavits that refute what your client says occurred. They prove that Apollito appeared for the deposition on the date it was scheduled, that counsel chose not to depose Apollito despite his offer to stay as long as it took, and despite knowing that he was unavailable on the 29th. And I see no evidence, evidence, sworn testimony to contradict that in this record. The argument that... Is there any sworn testimony to contradict that? I was present, Your Honor. Is there any sworn testimony in the record to contradict that? I did not submit an affidavit to that effect, no. But the... What's the district court supposed to do? Based on the evidence on the front of the notice of deposition. There were unrebutted affidavits that it relied upon. Your Honor, the... Well, let me move on. As far as the issue, excuse me, about the kind of ratings compiled and so forth, Your Honor, there's no evidence in the record to show that there's any accuracy, authenticity to those ratings. It's plain and clear that prior to the creation of this special unit under which Ms. McCurdy was transferred from where she was functioning, performing, and doing her job well, there was no issue of her not being an employee who met standards and even exceeded standards, even up to the time that she was transferred under the temporary unit under Beth Jones. Secondarily, Beth Jones admitted during her own deposition that she has no idea how those ratings and so forth numbers were calculated. And when asked about it, she said she just took it for face value. Or something to that effect. She has no idea how those things are calculated. And the courts have previously required, before you can rely on a summary document, you have to put forth the underlying documents that prove that the summaries are correct. That was never done. They were never produced during discovery. They were asked for and never produced. So you cannot rely on summary documents when you don't have the underlying documents by which those summary documents were put together. And there's also testimony from Ms. McCurdy that individuals have told her that all these numbers could be manipulated by the individuals in the IT department, which is their job. And anybody like myself with basic computer skills knows that any statistics are open to manipulation. And secondarily, they're open to the deliberate misuse and abuse. I think the overall issue here is that all the facts and evidence presented in this case do defy summary judgment being granted based on what are basically no more than the conclusory and self-serving affidavits of the affiliates. Mr. Townsend, so when, before you got involved in the case, I think your client pointed to two comparators, if I'm remembering the record correctly. And do you want to, I mean, are those the comparators that you think are the best ones or is there a better one? I think those comparators are essential, but also the fact that there are, the entire agency had numerous other disability determination service specialists. What's your best comparator? Not, I can't name them. All right. From my memory on, I do apologize. All right, no, that's fine. Thank you. Okay, Mr. Townsend, we have your case and it's under submission. We are adjourned for the week.